I've been doing this 21 years and 22 years. I've handled every fact scenario, I think, under the Workers' Comp'n Act I've imagined. I can't understand why the petitioner in this case, or the survivors in this case, don't fall within the traveling employee provisions or interpretation of the Workers' Compensation Act. I have a gentleman, the decedent, who worked at Melrose Park half of the day, two-thirds of the day. I can see where his work at that location would be addressed under a traditional arising out of or in the course of analysis, where the breadth of the act might not be as generous as it would for a traveling employee. But, every single day, the record tells us, every single day, he would leave that Melrose Park location in a vehicle owned by the respondent, testing a vehicle. He would drive it out to the western suburbs and he would continue working up until 10 to 12 o'clock at night. Every single day. There was no contradictory evidence. You couldn't convince Commissioners Sherwin and Duff? You're correct. I couldn't. I couldn't. And I couldn't convince Arbitrator Kinnaman at the lower level. Now, the way I explain that is I have the ---- It's pretty telling, don't you think? I think it's unfortunate. That's about all that I can say. Let me interject a question on the legal perspective. In this situation, what I think it boils down to is the time of the accident, the decedent, and there's no question this is a tragic situation. Right, sure. Was on a personal family errand. He was on a private errand to do something for himself or for his family. Let's assume that he's on the clock or somebody's subject to call. Does that mean that if you're subject to call 24-7 and you're off doing something purely personal or private, everything is automatically compensable? No. No matter what activity you're doing? Of course not. In this case, it would be, though. What was he doing that was connected to the business when he was getting the cappuccino? He was, as you know, someone who was in constant contact. Well, the record tells us he was in constant contact with his coworkers, with his supervisors, with the project he was in charge of out in Colorado. He had his pager. He had his cell phone with him at all times. So he's on call. I mean, I'm assuming for the sake of the argument that he's on call 24-7. Here's where we get to. So when does it become a private matter and when is it related to business? Your argument would be that if you're on call, no matter what you do, it's work-related. Because he wasn't testing out a vehicle at the time the accident happened. Correct. He wasn't. He was doing something that everybody does. They run an errand for coffee. Except in this case, the unique set of this circumstance is that the vehicle that he used for that trip was chosen to allow him to arouse himself so that he could wake up to continue performing the work for the company. He'd been working all night up until that trip. He was exhausted, or at least he was fatigued. He was messing with his hair, as the petitioner, the survivors told us. So your thesis is that anything he would have done to arouse himself would have been work-related? As long as it's not illegal, as long as he's working, and as long as he intends to come back, he actually took that trip not only on a motorcycle to allow the wind to go through his hair, and you know that that's the way that he aroused himself based upon what he did when he would take the vehicles for testing out west, even further west. He would have the windows down. He would have the air on. One of the destinations of the trip was also to obtain cappuccino, caffeine. And he was also getting some groceries for a family activity, right? Sure, absolutely. So even if we consider that a deviation, or even a slight deviation, he had already had the conversation with the co-worker, because no one from the house called him. He had the conversation with the co-worker, as he'd been doing all evening, while he was in the store. At that time, he changed his plans. He decided, I've got to get back to the house to finish my work. All of that evidence is uncontested. So a call from the co-worker, you know, presumably on the projects he's working for or not, directed him to get back to his work. He was en route back to where his computer was running and waiting for him, and his papers were spread out on the desk. All he was doing was trying to get himself going so that he could finish up the work that he had to do for the company that night. So in the event that he's off on a school visit, or he's off on a school project, or he's out visiting with family or with friends or something else, where they're drinking or having fun or socializing, I agree. I don't think there's any way I could possibly make that. This turns out if he hadn't got the cappuccino, you would lose the case, right? I think the cappuccino is kind of a red herring. I think the fact that that's a destination is important. Well, you said it's because he had to wake himself up to do his work. So if he's not purchasing anything under your logic that's going to help wake him up, he would lose. Or if he had taken the van and he had the windows up so he wasn't having wind blow through his hair to wake himself up. The whole trip, the whole thing was designed to wake him up. Yes, he stopped to get some additional stuff for the kids while he was out, which is right next to where he bought his caffeine. Well, the analogy would be if you're in an office and you're drowsy and you get up out of your chair and you decide to walk around the block. That could be an analogy, except my argument in that case would be I have a traditional workplace setting where I'm in a specific location for my work. I don't think the traveling employee analysis would apply to me in that case. I don't think I'd enjoy as broad a protection under the act as someone like this guy would enjoy. I mean, he's got a third to half of his day outside the office working for this company. And I was trying to... There are cases we've written that are pretty close to my analogy. Yeah. Well, in that case, I like the analogy, you know, and I think it should, you know, especially under the traveling employee analysis, it really should be given to the survivors of this case. And I was thinking, if we have a traveling employee who is out on a sightseeing event, you know, in the course of their operation, the act is interpreted to apply to protect a guy walking on a lava field in Hawaii, for example. You know, that's recreation. That's a personal recreational activity. In this case, the guy's not going out for a pleasure drive, you know. He's not going out for a sightseeing trip. He's going out to wake himself up. He's using a traditional mechanism he's always used. The respondent has always benefited from his industry. So you were asking us, then, what would the role of this case be? If somebody is engaged in an activity to wake themselves up, it's work-related? If a traveling employee is engaged in an activity or gaining or obtaining tools to allow him to complete the respondent's work, there is that nexus of a connection between you and the error, the trip itself. There is a nexus between the interests of the employer, the business of the employer, and this guy's trip, his operation, the accident. So that would be the difference in this case. And I think looking at it from a traditional workplace analysis where we have a set location where the guy is putting in hours and once he leaves the building confines, he's no longer covered under the Act, arguably, except in a certain limited circumstance. That couldn't apply in this case. I couldn't win if that was his actual employment status. But once he left Melrose Park, he was no longer a traditional worker in a traditional workplace. He became a traveling employee. And I think what's important in this case are two different facts. Respondent's attorney during the trial cross-examined the petitioner, or the survivors, and established the guy was field personnel once he left the building, once he left Melrose Park. Field personnel, traveling employee. The second thing that's important, I think, it wasn't appealed, the commission concluded that the home was not designated as an official workplace. So if the home was not designated as an alternative official workplace, the guy had to be a traveling employee for all the work he was doing away from Melrose Park. I don't understand how it could be any other way. But they decided it both ways. They said that they found that he wasn't a traveling employee, but if he were a traveling employee, they found that his deviation was neither reasonable nor foreseeable, and had no potential benefit for its employer. So he loses in both ways. Right. No, no, I understand, and I contend that that ruling is incorrect. No, everything you understand is incorrect. The fact of the matter is they covered it in both directions. Right. I think those two positions are logically inconsistent, though. I think there was a benefit. I think the only evidence in the record is that everything this guy did for the company was for the company. His entire family bent to the interest of the company. In this case, he wasn't on a pleasure trip. He was trying to wake himself up so he could continue his work. If you look at it from a traveling employee analysis, the breadth of protections of the act have to take care of people who are left in a spot like this following an accident like this. It's tragic. You're right. But, I mean, if we address it under traveling employee, I think or I request that you find the guy was a traveling employee and that you apply the generous protections of the traveling employee analysis. Provide the survivors with benefits, the four children, and that's about it, unless you have any further questions. Thank you. Counsel, please. Excuse me. Could we get the clerk or someone to close the curtain a little bit? Do you want me to? I think it's on. That's what I thought. It was blinding me. I think it's on the other end. Is it? The other end. Go ahead. Good morning, Justice. Counsel, may it please the clerk, my name is Elizabeth Coppoletti, and I'm here on behalf of the appellee employer, Navstar. I agree this is a tragic accident. And my heart goes out to the Ross family and the fact that they're no longer going to have Mr. Ross in their lives. But that's what this is. It was a tragic accident. And it was a tragic accident which was in no way occasioned or in any manner due to Mr. Ross's work duties as a design engineer for his employer. Mr. Ross was not a traveling employee. Mr. Ross was a design engineer whose office was located in Melrose Park, Illinois. On the date of his death, he actually went to his office. He worked an entire day. He got up in the morning, went to his office, came home, had dinner with his family. And admittedly, after dinner, worked on his computer for a while. There's no dispute he was working in company business? Well, I don't know. I mean, that's an inference that one would have to take from the evidence. I mean, what they said was that he was working on schematics. I don't know if there would be any way for Mrs. Ross to say specifically what it was she was working on. Let's assume for the sake of the argument it was company business. Okay. Okay. What about his argument that, can you maintain the argument that waking oneself up in the course of performing work for the employer is something that's incidental to the employment? Well, first of all, that assumes that the fatigue was in fact occasioned by his employment and him working at home on his computer accessing his work. I mean, there's no evidence in the record that the fatigue was occasioned by his work. I mean, as the commission correctly noted, I'm sorry. Didn't he work all day and then come home and continue working? Or he played ball with one of his kids for a little while? He did. And he got on the computer. Pretty much I contested that he worked a lot of hours. Absolutely. There's no question that he worked a long hours. But as the commission noted even in its decision, being fatigued is commonplace for the middle-aged. And also I think cited in my brief is that Brennan's decision was a purpose. For the what? I'm sorry. I'm sorry. Cited in the brief was that, and I may be mispronouncing it, the Barron's decision. No, no. The fatigue was what? Occasioned by him being middle-aged potentially. You realize this. Your arguments are being recorded. All right. His fatigue was occasioned by the fact that he was stressed out due to his other businesses. I mean, I don't know why he was fatigued. I mean, and I think that that's very important. Well, the record says he gets up at 4 a.m. to go to Melrose Park. Correct. My calculation says at the time that he gets up from the table it's 17 hours. Correct. I mean, he's tired. I don't know what he did while he was at work. I mean, we have no idea what he did while he was away from home. Let's sort of go from the perspective he was tired from work. The question I have to you is waking one's self up, can that be arguably to be incidental to his work? Well, but that already assumes that he's some type of traveling employee. I mean, there's no question that he had a designated work site in Melrose Park, Illinois, where he went to and came home from work. He was at home. So the only way that we can get to that we've gotten to this point where he's fatigued from work is establishing him as a traveling employee. I'm just trying to play the devil's advocate. Okay. What I'm trying to get at, and I didn't have a chance to ask this question of counsel, the fact that somebody's a traveling employee, I believe the law does not exempt them from proving that the injury arose out of or in the course of the employment, even if you are a traveling employee. So the question I have is, is waking up, is this within the incidental to his job? Okay. So we're assuming he's a traveling employee. Well, the law is clear that it still has to be reasonable and foreseeable. So the rising out of component is therefore looked to in not in terms of increased risk, but instead for traveling employees in terms of reasonableness and foreseeableness from the employer's perspective. And what's your argument on that? Well, my argument from that is this was neither reasonable nor foreseeable from the employer's perspective. And specifically I would cite to the U.S. Industries, Kate, where the Supreme Court specifically found that a drive in the mountainous terrain, a pleasure drive in the mountainous terrain late at night was neither reasonable nor foreseeable. This wasn't a pleasure drive, was it? Well, I certainly think it was a drive to get snack foods and a personal drive for a personal errand for his family. I mean, there's no question that the predominant reason for the drive was for him to go and purchase snack foods for his daughters who had been arguing about that. So, yeah, I would, in fact, see that as an, in fact, a pleasure drive. Further, this Court in Hoffman, or it may have been the Supreme Court, said it was unforeseeable for Mrs. Hoffman, who was designated as a traveling employee, who went to the store to purchase a picnic table for her own personal use. Now, there was question as to whether or not the picnic table was for work. But the Court said that was not foreseeable. It was not foreseeable by the employer that they would go, she would go and purchase a picnic table. Well, certainly if it's not foreseeable by an employer that they would go and take a ride in mountainous terrain. And coffee to wake themselves up? Don't people have coffee at work to wake themselves up? Certainly they have coffee at work. But is it reasonable and foreseeable that he's going to get on his personal motorcycle at 9 o'clock in the evening with his wife to drive all the way to the Jewel to pick up the coffee? And then when all is said and done, he never even purchases the coffee. And I would dispute counsel's rendition of the fact that he left the Jewel in a rush because of his work duties. He did not purchase the coffee according to the evidence? Correct. He never got the coffee. The coffee was never purchased. And, in fact, he left the Jewel because right before they got to the Jewel, Mrs. Ross said to him, I'm not feeling well. Please go in and buy these snacks as quickly as you can. I want to go home. So he goes into the Jewel, buys the snack, and immediately there was a telephone call. But they had already decided to abandon the purchase. Mrs. Ross had said to him, I'm sick. I want to go home. Let's go home. Okay, but there's at least your opposing counsel suggests, the record suggests there's a dual purpose, that the ride itself had an awakening effect as much as the desire to get coffee. So assuming, so again, that that analysis assumes that he's already in a traveling employee analysis. And I would say to you that the awakening effect, one, is not reasonable nor foreseeable to the employer that he is somehow going to wake up himself up by getting on a motorcycle at 9 o'clock at night with his wife to go to the Jewel. That's not reasonable, nor is it foreseeable for an employer. And I don't think it would be easy. I don't want to be too technical, I suppose, but split that up. Is it reasonable and foreseeable that somebody who's working and wants coffee to wake themselves up? I think arguably that's foreseeable. But the motorcycle part may not be that he's going to take off and go on a ride. Assuming he's a traveling employee and he needs to wake himself up, then do you believe that whatever he did to wake himself up would be work-related? No. I mean, how about two gators off the trapeze in his backyard? Yeah, absolutely. Would that be work-related if he chose that? No. Was it reasonable and foreseeable to the employer that he would jump on a motorcycle and go with his wife on the back to wake himself up? No, I do not believe it's reasonable and foreseeable. In fact, I cited in a case which is Lynch. In that circumstance, the claimant was a security guard who was given permission by his employer to go get coffee off of the company premises. When he left the company premises, he got his coffee, purchased his coffee, was walking back to the company premises, slipped and fell and broke his arm. And the Supreme Court stated no, no benefits, because that was not, there was nothing incidental to his employment and there was no increased risk for that. So I would submit to you. There's no waking-up doctrine? Pardon me? There's no waking-up doctrine? I haven't seen a waking-up doctrine. And let me tell you, I think, I feel like I've read every single case I can possibly read when it comes to this matter. I haven't seen anything. The gentleman was a non-traveling employee, right? Correct. In that case, the gentleman had not been a traveling employee. It was a traditional analysis arising out of, in the course of. But I would say that that's still applicable here. I don't believe, first, I don't believe he's a traveling employee.  I don't believe the fact that he had a computer at home provided to him by his employer or the cell phone or pager makes him a traveling employee. It makes him accessible. Let me ask a question. Sure. About the record. The widow testified that while he was in getting the snacks, she saw him talking on his cell phone. Absolutely. And he came out and said, I've got to get home right away. And that has nothing to do with the children, okay? And it was on the ride home. Was there anything in the record that explained who he was talking to? Was that about business? No. There was no explanation to that? There's no explanation. There were hearsay objections that were sustained. Yes. I mean, that testimony I don't believe was actually let into the record because it was objected to and the objection was hearsay. I do believe a lot of this information was, in fact, objected to and was sustained on hearsay grounds. Now, there is some evidence of it here and there solicited, I believe, on cross-examination. But the majority of this evidence was not even offered into the record because they're all statements made by Mr. Ross. Well, the reason I ask you is, I mean, you know, he never got the cappuccino. He planned to get the cappuccino. You were saying it was because the wife was ill, that there was some indication that he got a phone call and said, I've got to get back now, and I didn't know if there was any explanation for that. No, there was no further explanation. But from the record, it was clear that Mrs. Ross did testify that the reason they abandoned the trip was that she was feeling ill. And she actually told him that before he even walked into the Jewel to purchase the snacks, is that she wanted to go home so that, because of her ill feeling. Isn't it, you know, we say reasonable and foreseeable, but isn't it more proper to reverse that the actions taken by the claimant were unreasonable? Well, yeah, I believe there's actually a case I'm pointing that has to do with the ATV driving where, I mean, there's several ATVs and some of them have been found to be compensable as reasonable and foreseeable, but there's specifically one where the judge Well, the question is, again, to clarify the analysis, it should be reversed. The first test is, is it foreseeable? Correct. Not reasonable, just foreseeable. Yes, absolutely. The only question is, yes, it's foreseeable. Then your other defense is, was it reasonable? Right. I know, I just don't understand why we went that way. What was foreseeable? Did he hop on a motorcycle? That's the question. That's foreseeable? Well, that's I mean, the commission said it wasn't. And don't they decide what's foreseeable in addition to being what's reasonable? Absolutely. And just, I mean, I know that there was, I didn't really touch on this, but in the briefs, counsel had indicated that this should be decided de novo. I would submit to you it's manifestly of the evidence, and that's, in fact, the function of the commission, to look at all these facts, draw the inferences, and from them find whether or not his accident arose out of in the course of employment. And that's, in fact, clearly what they found. They said, first, he's not a traveling employee. Secondly, even if he is a traveling employee, his actions were neither foreseeable nor reasonable. And then they even delved into further analysis, which I've delved into further, even assuming that his home became a secondary work site, using the traditional analysis of arising out of in the course of, he doesn't meet either prongs of those analyses. There was no arising out of component, and there was certainly no in the course of component, because, as we've discussed at length, we would be in the personal comfort doctrine, and it's clear that he deviated, even assuming that doctrine is applicable. Which I don't think it is, because of the Circuit City case, which says that the personal comfort doesn't extend to co-employees. I don't see how it could possibly extend to that of his family members. It doesn't extend to what? I'm sorry. Co-employees. Co-employees. Co-employees. It certainly, I would submit to you, it certainly would not extend to the personal comfort of his family members, which is really what they were doing when they went to the Jewel to buy the snack foods. Unless you have any other questions for me, I would respectfully submit that you affirm the decision of the Commission as it's not being against the manifest way of the evidence. Thank you. Foreseeability. Reasonability. Foreseeable that someone would use caffeine and air as their methods for stimulating themselves so they can continue to work. It's foreseeable. Reasonableness. What about the motorcycle? Here's the important part about all this. If you look at the record, the IWCC did draw the conclusion that it wasn't reasonable or foreseeable or whatever they drew, but there's no evidence in the record at all about what was foreseeable or what was reasonable to the employer. There's absolutely no evidence about what was foreseeable or reasonable to the employer. So there is no evidence underlying that conclusion by the Commission. I'll ask the question again. Would it be reasonable and foreseeable if he chose to arouse himself by doing two flips on a trapeze in his backyard? Absolutely not. Why not? Nor would illegal stimulation be foreseeable or reasonable. In this case, we have a guy. I wasn't thinking of illegal stimulation. I was just thinking of the trapeze. Well, if he's at home and he's got gators and he's got that available to him, I guess that possibly could be convinceable. But my thought was we have to have some evidence of what's reasonable, what's foreseeable to the employer in a case. In this case, we have nothing because they put no evidence on. So if we're not looking at what was foreseeable or reasonable to this employer. That's not true. If we look at that one, we're in real trouble. Jurors decide on a daily basis what is reasonable or foreseeable to an average person. That's what they do. And that's what the Commission does. They determine what's reasonable under a given set of circumstances. Nobody has to tell them whether it's reasonable or the employer would think it was reasonable. They decide that. But doesn't there have to be a foundation in the evidence for them to draw that conclusion? How do you prove that? You bring in the employer representative. We had no idea he was doing this stuff. We wouldn't have authorized him to do this stuff. There's nothing. There's nothing about what they anticipated or what they expected. Well, but here, isn't it your burden to prove the elements of the case? Yeah. Why does the employer have to prove it's not reasonable? No, you're right. But what I'm facing in this case, or what I'm facing exactly in this case, is that I have to disprove a failure to prove what was reasonable or what was foreseeable to the employer. I have to assume that the Commission is going to draw conclusions against me in the absence of any evidence to support that conclusion. Now, if reasonableness and foreseeability is a legal concept where we just say, well, to the rational general public of employers, is it rational? Is it reasonable? Is it foreseeable? Yes, it is. Because in this case, he's driving a legal vehicle. He's going to speed limit. He has his helmet on. He's obeying the rules of the road. He's not engaged in any illegal activity. He's doing everything legal. There is no law against it. More importantly, there's no evidence in the record that the employer prohibited any of this stuff. He had no rules on it. All this guy had to do was do his work, keep tethered to the company. That's what he was doing. That's why the traveling employee analysis, I think, is the most appropriate analysis for this case. So the motorcycle, you know, all the extra accoutrements, the wife on the back, the late night and everything, I think those are kind of non-issues, really. I'm looking at air. I'm looking at caffeine. Whether he got the caffeine or not, I think, is a red herring, because if the destination, success in getting to the destination is the linchpin, people killed on the route to wherever they're going would never be found to be compensable cases. So I would ask that you find that the guy was in a traveling employee setting, that you award survivors benefits in the case, and thank you. Thank you for your time. The clerk will take the matter under advisement for disposition.